## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

JEFFREY R. HINES and
LISA HINES,

    PLAINTIFFS,

v.                                                                                  CASE NO.: CV-04-J-3078-NW

CENTRAL LOCATING SERVICE,
LTD., INC.,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 7), and a memorandum and evidence in support of said motion (doc. 8) to which the plaintiff has responded by submitting evidence and a response in opposition (doc. 9). The defendant thereafter filed a reply (doc. 10). Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

### I. Factual Background

The fact of this case, in the light most favorable to the plaintiffs, are as follows: Plaintiff Jeffrey Hines ("Hines") claims he was terminated from his job due to the cost of his wife's treatment for Crohn's disease.

1

Hines began working for defendant in May, 2001, when he was hired by Shane Trumbly, a field manager. Hines depo. at 28-29, 128; Trumbly depo. at. 9. Trumbly was his supervisor during his entire employment with defendant. Hines depo. at 31. Sean Murphy was the district manager over Trumbly. *Id.*, at 35; Murphy depo. at 6. Hines' job benefits included family coverage health insurance for which he paid premiums. Hines depo. at 61.

The defendant is self insured through the Central Locating Service Health and Welfare Plan. *See* Patricia Kinney depo. at 9, 13-14.[1] Defendant has a third party agent (REMSCOE) which administers and pays claims. Kinney depo. at 14. Lisa Hines suffers from Crone's disease. Hines depo. at 24. She has receives Social Security Disability and Medicare. *Id*., at 64; Lisa Hines depo. at 27, 32.

Defendant locates underground utilities to protect them from damage during excavation work. Trumbly depo. at 10; Hines depo. at 29-30. Much of its work is performed under contract to BellSouth to locate buried telephone lines. Trumbly depo. at 11. Routinely, the locators would meet the lead locator at a gas station on

---

[1] Patricia Kinney is the Human Resources Benefits Manager for CLS. Kinney depo. at 11. CLS is a subsidiary of Asplundh. Kinney depo. at 12-13.

Highway 72 each morning to get their job assignments for the day.[2]  Hines depo. at 32-33.  In May or June, 2003, Hines became the lead locator.  *Id.*, at 34.

At some time during Hines' employment, Trumbly's wife called Lisa Hines and gave her the name of Dr. Dickinson, to whom Lisa went for treatment.  Hines depo. at 60; Lisa Hines depo. at 36-37. Hines and Trumbly regularly discussed how Lisa was doing.  Hines depo. at 60.  In the summer of 2003, Lisa's Remicade treatments changed from every other month to every month.  *Id.*, at 114.

In September, 2003, Hines contacted Murphy about damage to a "high profile" cable that was not on the plat Hines was provided by defendant.  Hines depo. at 41-43.  High profile cables were more expensive than others.  *Id.*, at 42; Murphy declaration, ¶ 2.  Trumbly met him at the job site and told him he should have looked under the manhole. Hines depo. at 48-49.  He was told to meet Murphy the next morning at the Huntsville office by Trumbly.  *Id.*, at 35, 50; Murphy depo. at 7.  They discussed the damage at the job site and Murphy said Hines should have "popped the manhole."  Hines depo. at 52; Murphy declaration, ¶ 4.  Hines explained he did not do so because he did not know the cable existed. Hines depo. at 53.  He said if he had it to do over again, he would do it the same way.  *Id.*, at 53-54.  Hines was terminated.

---

[2]Hines asserts he was denied a fax machine to receive tickets for jobs so he would not have to travel to the meeting site each morning.  *See* affidavit of Hines, ¶ 7.  The plaintiffs have offered no evidence that other employees were allowed such a luxury.

*Id.*, at 36; Murphy declaration, ¶ 4. Murphy decided to terminate Hines during the meeting because of Hines' answers and his disregard for company policy. Murphy depo. at 8-9. He was not terminated for actually causing the damage. Murphy declaration, ¶ 4. Lisa Hines and her medical bills were never mentioned. Hines depo. at 54. This was on September 12, 2003. *Id.*, at 76. Trumbly did not know ahead of time that Hines was going to get fired. Trumbly depo. at 29.

Defendant had to pay $10,820.56 to replace the damaged cable. *See* exhibit 1 to Trumbly depo.; Murphy declaration, ¶ 4; exhibit 1 to Murphy declaration. Trumbly agreed that the damage to a high profile cable was a terminable offense. Trumbly depo. at 16. He stated that Hines' actions went against everything in locating and being accurate and thorough and protecting BellSouth's facility. *Id.*, at 17. Trumbly said that, although the cable in question was not on the plat map generated by Bell South, Hines should have pulled the manhole cover off and at least looked inside it. *Id.*, at 19, 21. He stated that "in this circumstance failure to even pull a manhole lid off to look inside when there was locate marks on both sides on the manhole, going east and west, and the manhole lid was never pulled. So that's an extraordinary circumstance." *Id.*, at 31. Trumbly remembered that Murphy asked Hines what would happen in the future, to which Hines replied that he would not do

anything any different if he had to do it again, and Murphy responded "that's why I can't let you work here anymore." *Id.*, at 36.

The only time Hines ever spoke to Murphy about Lisa Hines' illness was sometime in early 2003, when he contacted Murphy to tell him he needed to be off for a few days because his wife was going to be hospitalized due to severe Crohn's disease. Hines depo. at 39-41. Hines and Murphy never discussed Lisa's doctor bills or prescription bills. *Id.*, at 41. Murphy did not know Lisa had Crohn's disease. Murphy depo. at 14. He does not know what Crohn's disease is, has never met Lisa Hines, and has no idea of her physical condition. Murphy declaration, ¶ 5.

According to Trumbly, after Murphy fired Hines, Murphy said to Trumbly that he hated having to do that, and that Hines probably had a family dependent on the insurance, to which Trumbly told Murphy that Hines did, and Murphy responded that he wished he had known that first. Trumbly depo. at 37-38. According to Murphy, Trumbly mentioned after the termination that Hines' family really needed the health insurance. Murphy depo. at 17.

The plaintiff asserts he was terminated when other employees who caused worse damages than he did were not because of his wife's expensive medical treatments. Hines depo. at 96. He states there is no other explanation for his

termination. *Id.*, at 97. He assumes defendant received bills and paid for her treatments. *Id.* He had no idea REMSCOE was not part of defendant. *Id.*, at 98.

According to Kinney, defendant has no involvement in the submission and payment of claims, as REMSCOE handles that and has the authority to determine whether to pay claims. Kinney depo. at 15, 17-18. Defendant does not receive any explanation of benefits or diagnostic information when claims are paid. *Id.*, at 16-17. There is no cap on the amount of claims which can be paid in a certain amount of time. *Id.* at 22. A privacy officer for the defendant does get a weekly report which shows that the claims paid were for individuals who were eligible and identifies the employee for whom the claims were paid. *Id.*, at 21, 24, 26. No medical information is available to management. *Id.*, at 25.

Murphy has never seen any reports or claims from REMSCOE provided to defendant. Murphy depo. at 15. He was never told to hold down or contain employee health expenses. *Id.*, at 16. Trumbly never told Murphy that Lisa Hines had Crohn's disease. Trumbly depo. at 53-54. Trumbly had no knowledge of the costs of her medical care prior to the time Jeff Hines was terminated. *Id.*, at 54. Defendant did not get any kind of report on the charges of employees for health benefits. *Id.*, at 55.

According to Hines, an employee named Lee Tidwell caused thousands of dollars in damage when he failed to locate a double conduit run. Hines depo. at 99-

100. Trumbly explained that the defendant knew damage would occur on occasion, but there was a difference between mistakes like Lee Tidwell made and outright negligence. Trumbly depo. at 39.

Hines added up the medical statements they got for a year and asserts that his family cost defendant $70,000 a year. Hines depo. at 113. However, he has no idea of how this compared to anyone else. *Id.* Hines asserts that once Lisa's treatments became monthly, he was treated differently. *Id.,* at 115-116. The defendant was two employees short and when he asked Trumbly for help, either Trumbly wouldn't answer the radio or would say there was no one to send. *Id.,* at 116. When Trumbly didn't answer, Hines would call Batemon, a supervisor over a different area, who would find someone to help him sometimes. *Id.* at 122-124. After the two employees quit, Hines called Trumbly every day to ask for help. *Id.,* at 121. Trumbly says he would personally go help the plaintiff and that they had people brought in from out of state to help. Trumbly depo. at 58. Trumbly also states that the two employees who left took a major contract with them, so the work load was reduced. *Id.,* at 58-59. *See also* Declaration of Murphy at ¶ 3.

Hines attributes the huge workload to his wife's treatments because defendant did not hire anyone to help Hines. Hines depo. at 116. His logic is that defendant

7

was trying to overwork him so he would quit so they would not have to pay for his wife's treatment. *Id.*, at 117-118. His only evidence is this is what he thinks. *Id.*, at 118-119. He has no other logical explanation for why he lost his job. *Id.*, at 120.

A May 2003, performance improvement plan states that plaintiff had damages at a high rate, which was unusual for him, but also noted their work had increased due to a lack of staffing. Exhibit 4 to Hines depo. The document states plaintiff had received verbal and written warnings since April, 2003. *Id.*

Based on the above facts, Hines sues for defendant's alleged association discrimination by wrongfully terminating him to avoid paying for the medical treatment of his wife, Lisa Hines, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. He further asserts defendant's actions violated the Employee Retirement Income Security Act ("ERISA") by interfering with the plaintiffs' ERISA benefits and by terminating Hines to avoid paying for Lisa Hines' medical treatment, in violation of 29 U.S.C. § 1140. Complaint, ¶¶ 24.[3]

---

[3]The plaintiffs refer to Lisa Hines as "defendant" in paragraphs 12 and 24 of the complaint. Although Lisa Hines is a named plaintiff, the court cannot determine any cause of action she would have under the facts of this case and either of the statutes at issue here.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324,

9

Fed.R.Civ.Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

### ERISA

ERISA makes it "unlawful for any person to discharge ... expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participation may become

entitled under the plan." 29 U.S.C. § 1140. This section prohibits an employer from terminating a disabled employee in order for the employer to avoid paying further benefits. *Godfrey v. Bellsouth Telecommunications, Inc.*, 89 F.3d 755, 759 (11th Cir.1996). Under § 1140, "[a] plaintiff must show that the employer had the specific intent to interfere with the employee's right to benefits." *Seaman v. Arvida Realty Sales,* 985 F.2d 543, 546 (11th Cir.1993); *see also Owens v. Storehouse, Inc.,* 984 F.2d 394, 399 (11th Cir.1993). "This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for discharge but does require plaintiff to show more than the incidental loss of benefits as a result of a discharge." *Seaman,* 985 F.2d at 546.

This burden can be met either by showing direct proof of discrimination or by satisfying the scheme for circumstantial evidence established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must demonstrate by a preponderance of the evidence a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94 (1981). If the plaintiff does so, a presumption of discrimination is created, and the defendant must articulate a legitimate nondiscriminatory reason for its conduct. *Id.* at 253, 101 S.Ct. at 1093. If the defendant provides an acceptable reason for its conduct, the presumption of

discrimination disappears, and the plaintiff must demonstrate that the reason given was a mere pretext for discrimination. *Id.*

In the context of a claim under 29 U.S.C. § 1140 alleging unlawful discharge, a plaintiff establishes a prima facie case of discrimination by showing (1) that he is entitled to ERISA's protection, (2) he was qualified for the position, and (3) he was discharged under circumstances that give rise to an inference of discrimination. *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 347 (3rd Cir.1990); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114-15 (2nd Cir.1988). To satisfy the last element the plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor. *Turner,* 901 F.2d at 348. The plaintiff cannot establish a prima facie case merely by showing that, as a result of the termination, he was deprived of the opportunity to accrue more benefits. *Id.; Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir.1988). Instead, the employee must demonstrate that the employer's decision was directed at ERISA rights in particular. *See Unida v. Levi Strauss & Co.,* 986 F.2d 970, 979 (5th Cir.1993).

In the facts before this court, Hines cannot establish that he was terminated under circumstances giving rise to an inference of discrimination. He produced no evidence that the sole decision-maker, Murphy, had any idea of how much Lisa

Hines' medical care cost.[4] He has produced no evidence that defendant was expending more in healthcare for Lisa Hines than for other health insurance beneficiaries.[5] He offers only that he cannot think of any reason he was terminated other than the cost of his wife's medical care.[6] He alleges that he was overworked for some reason related to his eventual termination. These allegations and conjectures are wholly insufficient to give rise to an inference of discrimination. The plaintiffs direct the court to *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791 (11th Cir.2000), a case under the FMLA, for the proposition that close temporal proximity of an adverse employment action to when the employee avails themselves of a benefit "should be a crucial fact to be considered herein..." Plaintiffs' memorandum, at 7. *Brungart* actually states as follows:

> In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Raney v. Vinson*

---

[4]The deposition of Patricia Kinney, submitted as evidence by both the plaintiffs and the defendant, establishes that Murphy did not have access to this information, even if he wanted to find out how much defendant was paying on health insurance claims for a particular employee.

[5]The plaintiffs have not even produced any evidence of how much the additional treatments Lisa Hines received in 2003 cost the defendant, or that she did, in fact, receive such treatments, or that this was significantly more than the defendant was billed for other health care insurance beneficiaries.

[6]The plaintiff does not address Murphy's testimony that the plaintiff was terminated because he stated he would take the same actions in the same situation again, and not because of the damage those actions caused.

13

> *Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression...."). That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him. As with most facts, the defendant's awareness can be established by circumstantial evidence. *See Goldsmith,* 996 F.2d at 1163.
>
> The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *See Gupta,* 212 F.3d at 590; *Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir.1995) ("Proximity in time is sufficient to raise an inference of causation.") **However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.** *See Clover,* **176 F.3d at 1355--56.**

*Brungart,* 231 F.3d at 799 (emphasis added).

Because the evidence offered by the plaintiffs shows, at best, only "the incidental loss of benefits" as a result of his termination, the defendant's motion for summary judgment on the plaintiffs' § 1140 claim is due to be granted. *See e.g., Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir.1993), citing *Seaman*, 985 F.2d at 546; *see also Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 239 (4th Cir.1991); *Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir.1988).

**ADA**

The ADA defines the term "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). In order to establish a prima facie case under an "association discrimination" theory, a plaintiff must establish: (1) he was subjected to an adverse employment action, (2) he was qualified for the job at that time, (3) he was known by the defendant at the time to have a relative with a disability, and (4) the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the defendant's decision. *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1230-1231 (11th Cir.1999), citing *Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir.1997). The parties do not dispute that Hines was subject to an adverse employment action or qualified for his job at the time. Additionally, although the defendant suggests that Lisa Hines is not disabled within the definition of the ADA, the court will assume she is for purposes of this opinion.

Therefore, the court considers only the fourth element: Whether the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the defendant's decision.

15

As discussed above, the plaintiffs have failed to offer any evidence that the decision-maker in Hines' termination knew about Lisa Hines' condition.  Because there is no evidence that Murphy knew anything about the severity of Lisa Hines' medical condition, there can be no "reasonable inference" that Lisa Hines' "disability" factored into Murphy's decision to terminate Hines.  At most, the plaintiffs have established that nine months before he was terminated, Hines told Murphy he needed time off work because his wife was going to be hospitalized due to severe Crohn's disease.  Hines depo. at 38-40.  This is not sufficient to make Lisa Hines' medical condition into a determining factor in Hines' termination.  There is no evidence that anytime in the following nine months Murphy received any information, from any source, about Lisa Hines' condition, treatment, or the cost of her treatment.

The plaintiffs offer no evidence other than their belief that Lisa Hines' illness is the only explanation for Hines' termination.  Such conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered evidence of legitimate, non-discriminatory reasons for its actions.  See *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 443-44 (11th Cir.1996) (quoting  *Young v. General Foods Corp.,* 840 F.2d 825, 830 (11th Cir.1988)) (quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987)).  Without demonstrating that Murphy had

substantial knowledge of Lisa Hines' condition, plaintiff Hines cannot establish a prima facie case of suffering an adverse employment action due to his association with Lisa Hines.

## Conclusion

Having considered the foregoing, the court is of the opinion that no genuine issues of material fact remain and that the defendant is entitled to judgment as a matter of law. The defendant's motion for summary judgment shall be granted by separate order.

**DONE** and **ORDERED** this the 31st day of August, 2005.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE